Order Entered.

Patrick M. Flatley
United States Bankruptcy Judge
Dated: Friday, June 15, 2007 12:32:18 PM

# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| MARIANNE REGINA BROWN, | ) | BK. NO. 05-4470 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| MARIANNE REGINA BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | AP NO. 06-24 |
| | ) | |
| FAIRMONT STATE UNIVERSITY, | ) | |
| DIRECT LOANS, U.S. DEPARTMENT | ) | |
| OF EDUCATION, AND U.S. DEPARTMENT | ) | |
| OF EDUCATION/FISL, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

On January 17, 2006, Marianne Regina Brown (the "Debtor") filed a complaint to discharge her student loans owed to Fairmont State University, Direct Loans, and the U.S. Department of Education (jointly referred to as the "DOE"). After Fairmont State University failed to respond to the properly served complaint, the court granted the Debtor default judgment as to the student loans owed to Fairmont State University. The DOE, however, disputed the allegations contained in the Debtor's complaint, and a trial was held on April 26, 2007, in Clarksburg, West Virginia. Because the Debtor successfully demonstrated that repaying her student loans would constitute an undue hardship, the court entered an order granting the relief sought in her complaint on April 30, 2007.

1

The DOE appealed the court's order to the United States District Court for the Northern District of West Virginia. This memorandum opinion memorializes the court's ruling delivered from the bench on April 26, 2007.

## I. BACKGROUND

The Debtor is 50 years old, married, and resides with her husband and two sons, ages 30 and 27. The Debtor's husband performs odd jobs and sells firewood to contribute income to the household.[1] While both her sons are employed, they do not contribute any of their income to the Debtor's household expenses on a regular basis.

The Debtor attended Fairmont State University from the fall of 1996 through December of 2003 when she graduated with a degree in finance and management. The Debtor financed her education with student loans in the approximate amount of $36,300. She also incurred approximately $14,100 in Parent Plus loans to help finance the college education of her sons.

While the Debtor attended Fairmont State University, she was employed part time in the campus computer lab earning minimum wage. After graduating, she worked at various jobs, including Target, Exxon, and Subway, earning $6.00 per hour while working fewer than 40 hours per week. After Subway, the Debtor spent several months unemployed while she applied for numerous positions with various banks and retail stores. After being declined for lack of experience and poor credit ratings, she finally obtained her current position as a customer service representative with a telemarketing center in January 2006. She earns $8.50 per hour and works 40 hours per week with an average net income of $975 monthly.[2] The Debtor submitted a copy of her check register for the three-month period preceding trial.[3] According to the court's analysis of the check register, the Debtor's expenses averaged $1,144 monthly, exceeding her

---

[1] The Debtor's husband had gross income of $1,800 in 2006.

[2] The Debtor's total gross wages in 2006 were $14,623.

[3] The Debtor's Schedule I showed her net earnings as $390 per month, which combined with her husband's earnings of $693, provided $1,083 in household income. Schedule J shows $1,438 in monthly expenses. Because the Debtor's circumstances have changed since the filing of the schedules on September 28, 2005, the court will rely on the Debtor's testimony, 2006 tax returns, and check register to determine her monthly income and expenses.

2

income by $169 each month.[4] In fact, the Debtor's check register demonstrates that her sons provided the Debtor with funds to pay the monthly expenses during the three-month period of time.[5]

## II. DISCUSSION

In order to discharge a student loan obligation pursuant to § 523(a)(8) of the Bankruptcy Code, a debtor must demonstrate that excepting such debt from discharge would impose an undue hardship on the debtor and the debtor's dependents. 11 U.S.C. § 523(a)(8). In order to establish undue hardship, the Fourth Circuit Court of Appeals has adopted the three-prong *Brunner* test, requiring that a debtor demonstrate: 1) she cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay her student loan obligation; 2) additional circumstances exist indicating that her state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and 3) she has made good faith efforts to repay the loans. *In re Frushour*, 433 F.3d 393, 400 (4th Cir. 2005) (citing *Brunner v. N.Y. State Higher Educ. Servs. Corp.*, 831 F.32d 395, 396 (2d Cir. 1987)).

### A. Minimal Standard of Living

The Debtor contends that she cannot maintain a minimal standard of living given her current income and expenses, absent a payment on her student loans, and is forced to seek contributions from her sons in order to meet her monthly living expenses. Under the *Brunner* test, a debtor must first establish that she is unable to maintain a minimal standard of living, based on her current income and expenses, if required to repay her student loans. *In re Frushour*, 433 F.3d at 400. The first prong necessitates a case-by-case analysis of a debtor's expenses and lifestyle. *Rifino v. United States*, 245 F.3d 1083, 1087 (9th Cir. 2001).

---

[4] The Debtor's monthly expenses include the following: $121 for gasoline, $196 for car repairs, $210 for food, $85 for clothing, $17 for medical expenses, $131 for electricity, $30 for car insurance, $10 for real estate taxes, $65 to the Internal Revenue Service, $78 for water, and $202 for miscellaneous items such as haircuts, recreation, household goods, etc.

[5] The sons provided funds to the Debtor for vehicle repairs. Without this contribution from her sons, she would not have had transportation to and from work. Her sons also provided $65 for her to deposit into her checking account to avoid overdraft fees.

The Debtor's net income is $975 per month, and her expenses averaged $1,144 in the three months preceding the trial.[6] The expenses contained in the Debtor's check register are extremely modest. As examples, the Debtor's only visible expense for recreation is an occasional meal from a restaurant, which is very rare, and approximates $11 for her and her husband, and the Debtor's clothing typically is purchased from Goodwill. While the Debtor is fortunate to have few fixed expenditures, she incurs substantial repair and maintenance costs for her vehicle and home, as evidenced by various entries in the check register submitted to the court.[7]

The Debtor is the primary source of support for her household, including her husband as a dependent. Even though her two adult sons reside with her and are employed, they do not contribute on a regular basis to the household expenses.[8] Therefore, even though the Debtor has few fixed expenditures and no unnecessary or frivolous expenditures, her budget is still unbalanced, leaving the Debtor unable to maintain a minimal standard of living. *See Vermont Student Assistance Corp. v. Coulson (In re Coulson),* 253 B.R. 174, 178 (W.D.N.C. 2000) (finding where "debtor's expenses clearly exceed[ed] her income, even though debtor had done almost everything possible to maximize her income and minimize her expenses," the first prong of the *Brunner* test is satisfied); *Wilson v. Educ. Credit Mgmt. Corp. (In re Wilson),* No. 01-30624, 2002 Bankr. LEXIS 1743, at *9-*10 (Bankr. E.D. Va. June 25, 2002) (finding that the debtor was not able to maintain a minimal standard of living with monthly expenses of $1,829.03 and income of only $1,578.99); *See Floyd v. Educ. Credit Mgmt. Corp., (In re Floyd)*, 54 Fed. Appx. 124, 125 (4th Cir. 2002) (upholding the bankruptcy court's finding that the debtor's annual income of $27,950 was insufficient to maintain a minimal standard of living in light of his living expenses);

---

[6] According to the Debtor's Schedule J, her monthly expenses averaged $1,438 while her income was $1,083 monthly on Schedule I. The reduction in expenses from the time of the filing of the schedules to trial, further demonstrates the Debtor's efforts to minimize her expenses.

[7] The Debtor's husband inherited the real property and 1989 Brandywine mobile home where the family resides, and the vehicle the Debtor has access to is a 1996 Pontiac Grand Am with an odometer reading of approximately 155,000 miles.

[8] In fact, the Debtor's son Robert Brown also filed for relief under Chapter 7 of the Bankruptcy Code.

4

*In re Correll,* 105 B.R. 302, 306 (Bankr. W.D. Pa. 1989) ("Where a family earns a modest income and the family budget, which shows no unnecessary or frivolous expenditures, is still unbalanced, a hardship exists from which a debtor may be discharged of his student loan obligations."). Because the Debtor cannot maintain a minimal standard of living if required to repay her student loans, the court finds that the Debtor has satisfied the first prong of the *Brunner* test.

### B. Certainty of Hopelessness

The Debtor asserts that the combination of her age, lack of experience, and the absence of meaningful jobs in her chosen field is likely to continue into the future and significantly inhibit any improvement in the present state of her financial affairs. The second prong of the *Brunner* test requires a debtor to demonstrate that additional circumstances exist that show that the current state of affairs is likely to persist for a significant portion of the repayment period. *Frushour*, 433 F.3d at 400. *Frushour* describes the second prong as a demanding requirement necessitating a "certainty of hopelessness" that a debtor won't be able to repay her student loan obligations. *Id*. at 401.

The DOE argues that the Debtor's expenses are likely to decrease when the Debtor's husband and sons increase their contributions to the household expenses. The Debtor's current expenses exceed her monthly income by $169. According to the Debtor's testimony, her husband works odd jobs and sells firewood, earning a gross income of $1,800 in 2006. Additionally, he maintains the home – supplying the family with firewood and maintaining the lawn. Once he reaches the required age, he will receive approximately $280 per month in social security benefits. While this is an increase in the household income, the Debtor's income will decrease substantially when she retires. According to the Debtor's testimony, she received a statement from the Social Security Administration informing her that she will receive approximately $86 monthly in social security benefits. Therefore, while the DOE suggests that the Debtor's husband and sons may be able to increase contributions to the household expenses, the evidence does not support this contention. Moreover, based on the historical contributions of the Debtor's husband and sons to the household income, no persuasive basis in the record exists to support the DOE's contention that the Debtor's husband or sons will ever meaningfully contribute to the household income.

Additionally, the Debtor is currently making payments of $65 per month to the Internal Revenue

5

Service for income tax due in prior years. She testified that she has only two payments remaining to the Internal Revenue Service, which will reduce her expenses by $65, but her budget will continue to be unbalanced by $104. Furthermore, the Debtor's only vehicle is a 1996 Pontiac Grand Am with an odometer reading of 155,000 miles. Although the Debtor testified that she does not anticipate purchasing a new vehicle in the immediate future, it is inevitable that the Debtor will need to replace the vehicle, which will be an additional and necessary expense. Because the Debtor's expenses are unlikely to decrease substantially in the future, the only means of improving her current situation is to increase her income.

The DOE contends that the Debtor may have an opportunity to advance in her current position thus improving her current state of affairs. The Debtor is currently employed as a customer service representative in a telemarketing firm earning $8.50 per hour at least 40 hours per week.[9] According to her testimony, she is at an entry level position and may be able to advance within the organization. The Debtor, however, testified that while her hourly rate would increase with an advancement, she will no longer have the opportunity to work additional hours. Therefore, according to the Debtor's uncontroverted testimony, her net earnings would not substantially increase with her advancement.[10]

The Debtor testified that her current hourly rate is substantially higher than her earnings prior to this position.[11] In examining the Debtor's Schedule I filed on September 28, 2005, the court notes that she was employed in counter sales and had a net monthly income of $390. The Debtor has more than doubled her income with her current employment, but is still unable to meet her minimal living expenses. *See e.g., Oyler v. Educ. Credit Mgmt. Corp. (In re Oyler)*, 397 F.3d 382, 386 (6th Cir. 2005) ("Choosing a low-paying job cannot merit undue hardship relief."); *Frushour*, 433 F.3d at 401 ("Indeed, Frushour points to no circuit court that has held a debtor can voluntarily take a low-paying job in her preferred field, and then

---

[9] The Debtor testified that she works additional hours when she has the opportunity.

[10] The Debtor also indicated that the organization's management team is located in Akron, Ohio; therefore, any promotion to management would require her to relocate, and the Debtor has not indicated any willingness to leave her family's home in Fairmont.

[11] The Debtor testified that her prior jobs were for $6.00 per hour and were not full time employment.

6

refuse to repay her student loans by claiming undue hardship."). She testified that she has actively sought higher paying employment on a management level with various banks and retail stores, but she has been unsuccessful due to her lack of experience and her poor credit ratings. The Debtor stated that although she is not particularly satisfied with her job, she recognizes that her age and lack of prior experience limit the opportunities available to her. The Debtor further testified to her long-standing efforts since graduating from Fairmont State University to obtain new employment by regularly reviewing the job advertisements in the local newspapers. Unlike the debtor's profile in the *Frushour* case, here the Debtor has not chosen to be underemployed, nor has she held higher-paying jobs in the past that would belie her current state of affairs. Instead, as argued persuasively by her counsel, she appears to be trapped in a "cycle of poverty" from which, despite her best efforts, she has been unable to escape. Unfortunately for her, the evidence solidly points to the past as prologue.[12] Her fortunes are unlikely to change short of a completely fortuitous event. This court's judgment, however, cannot rely upon serendipity, nor be suspended indefinitely. The weight of the evidence in this case shows that the Debtor's unfortunate financial circumstances are likely to persist indefinitely.

Finding the Debtor's testimony credible and persuasive, the court finds that she has demonstrated that her age, lack of experience, and the prevailing local economic conditions have, despite her efforts to the contrary, restricted her employment opportunities and prospects, and thus established that her current state of affairs is likely to continue for a significant portion of the repayment period; indeed, for the remainder of her natural cycle in the work force.[13] Therefore, the Debtor has satisfied the second prong of the *Brunner* test.

---

[12] We all were sea-swallow'd, though some cast again,
And by that destiny to perform an act
Whereof what's past is prologue. . .
WILLIAM SHAKESPEARE, THE TEMPEST, act 2, sc. 1.

[13] Neither party offered evidence to establish a definitive repayment period regarding any of the individual loans or their collective balance. However, since the court has concluded that the Debtor has reached her maximum earning potential and that her financial state is unlikely to improve, it is the court's conclusion that, whatever the respective repayment periods may be, the Debtor's circumstances are unlikely to change over the course of any time period relevant to satisfaction of her loan obligations.

**C. Good Faith**

The Debtor contends that even though she has not made any payments on her student loans, she has demonstrated good faith efforts by maximizing her earning potential and minimizing her expenses. The third prong of the *Brunner* test compels a debtor to show good faith efforts undertaken to repay the student loans. *Frushour*, 433 F.3d at 400. The third prong looks to "[t]he debtor's 'efforts to obtain employment, maximize income, and minimize expenses.'" *Frushour*, 433 F.3d at 402 (quoting *O'Hearn v. Educ. Credit Mgmt. Corp. (In re O'Hearn),* 339 F.3d 559, 564 (7th Cir. 2003) (internal quotation marks omitted)). Furthermore, the Debtor's inability to repay the student loans must be a result of factors beyond the Debtor's control. *Id*.

As discussed above, the Debtor has made repeated and credible attempts to obtain employment to maximize her income. Her age, lack of experience, and poor credit ratings, however, have prevented her from obtaining a position which would fully utilize her degree. During her testimony, the Debtor recounted a number of occasions upon which she was refused a better job due to her lack of experience. Even though the Debtor has been unsuccessful thus far in her efforts to improve her employment, she still searches through job advertisements in the local papers and applies for suitable opportunities. As noted above, the Debtor's current earnings are more than double her earnings at the time that she filed her bankruptcy.[14] Furthermore, the Debtor has done all she can to minimize her expenses. At the time that the Debtor filed her bankruptcy, her expenditures were $1,438 per month, and she has decreased those to $1,144. She has few fixed expenditures and no frivolous or unnecessary expenditures. The Debtor rarely dines at restaurants and purchases her clothing from Goodwill. Despite the fact that the Debtor has more than doubled her earnings and decreased her expenses, her budget remains unbalanced, and the Debtor is unable to meet her necessary living expenses.

The DOE contends that the Debtor's lack of payments and contact with the DOE constitute a lack of good faith efforts on the part of the Debtor. The court, however, under the guidance of the Fourth

---

[14] While the Debtor's earnings have increased since the bankruptcy was filed, her husband's have decreased substantially. He reported a net monthly income of $693 on Schedule I; however, his total gross earnings in 2006 were $1,800, as evidenced by the 2006 tax return.

8

Circuit, rejects a per se rule requiring a debtor to participate in alternative repayment options available through the DOE in order to satisfy the third prong of the *Brunner* test. *See Frushour,* 433 F.3d at 402. ("The debtor's effort to seek out loan consolidation options that make the debt less onerous is an important component of the good-faith inquiry. Although not always dispositive, it illustrates that the debtor takes her loan obligations seriously, and is doing her utmost to repay them despite her unfortunate circumstances.") (internal citations omitted)); *Barrett v. Educational Credit Mgmt. Corp. (In re Barrett)*, No. 06-3519, 2007 U.S. App. LEXIS 13297, at *24 - *25 (6th Cir. June 8, 2007) (referring to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), the court stated, "Yet Congress left § 523(a)(8)'s 'undue hardship' language intact. Had Congress intended participation in the [income contingent repayment program] – implemented in 1994 – to effectively repeal discharge under § 523(a)(8), it could have done so. In addition, requiring enrollment in the [income contingent repayment program] runs counter to the Bankruptcy Code's aim in providing debtors a 'fresh start.' ") (internal citations omitted).

Thus, while important, the Debtor's failure to seek out loan repayment options is not solely dispositive of the issue as to whether she has exhibited good faith efforts to repay her loans. Rather, it is only one component of a broader examination of a debtor's good faith efforts. Indeed, as noted at the outset of this section, the primary focus of the court's analysis is upon the debtor's efforts at seeking a job, increasing earnings, and containing spending. *Frushour,* 433 F.3d at 402. The court finds that while the Debtor did not contact the DOE concerning repayment alternatives, she is without means to make even the most minimal of payments.[15] Her entire income is reserved for necessities such as food, clothing, and transportation. Therefore, any efforts to negotiate a reduced repayment schedule would have constituted an exercise in futility.

The Debtor gave credible and undisputed testimony that she has actively sought higher paying employment without success. Her lack of success has been due to circumstances beyond her control.

---

[15] In that regard, as distinguished from *Frushour*, no evidence was presented here as to whether, for instance, the Debtor would be eligible for participation in the Income Contingent Repayment Program or what her monthly payment would be if she were to participate in it.

9

Likewise, the DOE has not demonstrated any frivolous or unnecessary expenditures by the Debtor. Her discretionary expenditures are clearly within her control and, in that regard, she has demonstrated restraint and self-denial. In fact, the only indicia of a lack of good faith is that the Debtor failed to communicate with the DOE concerning repayment alternatives and to make payments in the two to three years since graduating. She, however, has clearly demonstrated that she does not have the ability to make payments on her student loans. While troublesome that the Debtor has failed to maintain contact with the DOE, there is no evidence that she has taken a cavalier attitude toward her student loan obligations. Indeed, the court was favorably impressed by the Debtor's demeanor and forthrightness throughout the course of her testimony. She simply does not have the means to make payments on the student loans. *Id.* at *28 -*29 (finding that the Debtor satisfied the good faith prong of the *Brunner* test even though he had not made any payments toward his student loans because he was unable to make such payments had they come due). Therefore, the court finds that the Debtor's diligent efforts to seek out better employment, maximize income, and minimize expenses constitute a good faith effort to repay the student loans in satisfaction of the third prong of the *Brunner* test.

### III. CONCLUSION

The Debtor has successfully demonstrated that excepting her student loans from discharge would constitute an undue hardship on her and her dependents. Therefore, the Debtor's student loans are discharged as ordered on April 30, 2007.